IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theodore Canton, LLC,                    :
                    Appellant            :
                                         :
        v.                               :   No. 496 C.D. 2023
                                         :
Dauphin County Tax Claim Bureau          :
and Blessing Muzirwa                     :   Argued:  September 11, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                              FILED:  November 21, 2024

        Theodore Canton, LLC (Taxpayer), appeals from the April 27, 2023 order of

the Dauphin County (County) Court of Common Pleas (trial court), which denied

Taxpayer's Petition to Set Aside Upset Tax Sale (Petition).  After review, we affirm.

## I.  Background

        Taxpayer is the owner of real property located at 321 South 18th Street,

Harrisburg, Pennsylvania (Property).  Taxpayer's address, per the County Tax

Assessment Office, is 493 Manhattan Avenue, New York, New York, 10027-5237

(Manhattan Avenue Address).  The Property was sold to Blessing Muzirwa

(Purchaser) at an upset tax sale on September 14, 2022.  Thereafter, Taxpayer filed

the Petition, arguing that the County Tax Claim Bureau (TCB) failed to provide

notice of the upset tax sale as required by Sections 308 and 602 of the Real Estate Tax Sale Law (RETSL).[1]

The trial court held a hearing on the Petition on April 20, 2023. At the start of the hearing, the trial court inquired of both Taxpayer and Purchaser whether the Property was purchased as an investment property or for personal use. Brent Boyce (Boyce), Taxpayer's sole member and owner, confirmed that the Property was used as a rental property. Purchaser's counsel also advised that the Property was bought for use as a rental unit.

The TCB presented the testimony of its deputy director, Holly Martz, who testified that the TCB sent a delinquent tax claim (Tax Claim) to Taxpayer by certified mail to the Manhattan Avenue Address. Tracking provided by the United States Postal Service (USPS) indicated that the Tax Claim was delivered to "an individual" at the Manhattan Avenue Address on April 26, 2021, at 6:59 p.m. Reproduced Record (R.R.) at 92a. The return receipt sent by the USPS to the TCB contained a signature in the "received by" box. *Id.* at 89a. The date of delivery and signature boxes were blank, and the return receipt did not indicate whether the return receipt was signed by the addressee or an agent. Martz testified that this is typical for return receipts sent by the USPS.

In July 2022, the TCB sent notice to the Manhattan Avenue Address by certified mail, restricted delivery, that the Property would be sold at an upset tax sale (Tax Sale Notice). The signature box on the return receipt sent by the USPS contained a signature, with the remaining boxes left blank. According to the tracking information provided by the USPS, the Tax Sale Notice was delivered to "an individual" at the Manhattan Avenue Address on July 27, 2022. *Id.* at 97a. The

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.308, 5860.602.

2

TCB sent a second Tax Sale Notice to the Manhattan Avenue Address on September 1, 2022, by First-Class mail. On September 22, 2022, the TCB sent Taxpayer notice to the Manhattan Avenue Address by First-Class mail that the Property was sold at an upset tax sale held on September 14, 2022. The USPS returned the notice as undeliverable. A second copy of the notice was sent to Taxpayer at the Manhattan Avenue Address by certified mail. The USPS returned the certified mail copy as unclaimed.[2]

During cross-examination, Martz acknowledged that the return receipts for the Tax Claim and the Tax Sale Notice did not provide delivery dates or identify the individual who signed the return receipts. Martz could not say whether the signatures on the return receipts belonged to Taxpayer's owner or addressee or to someone authorized to accept Taxpayer's mail. Martz advised that the TCB does not determine whether an authorized person signed the return receipts, as the TCB would "have no way of knowing" if the signer was Taxpayer's representative. *Id.* at 28a. The TCB did not make additional notification efforts because the return receipts for the certified mail copies of the Tax Claim and Tax Sale Notice had been signed.

Taxpayer presented the testimony of Boyce, who stated that he and his wife reside at the Manhattan Avenue Address and that no one else lives there. Boyce also owns a residence at 10 Walker Avenue, Sag Harbor, New York 11963 (Sag Harbor Residence). Boyce's parents reside at the Sag Harbor Residence, which Boyce and his wife visit during the summer. Boyce denied that the signatures on the return receipts belonged to him or his wife. He agreed that the initial deed transferring the

_____

[2] Martz also testified that the Tax Claim and Tax Sale Notice were properly published and posted. Taxpayer has not disputed that the TCB complied with the publication and posting requirements in RETSL.

3

Property to Taxpayer on February 28, 2020, documents the Manhattan Avenue Address as Taxpayer's registered address. Boyce admitted that he regularly receives mail at the Manhattan Avenue Address, which is a single-family home, and that he and wife are solely responsible for maintaining the Manhattan Avenue Address.

Boyce stated that he was self-employed in April 2021, when the Tax Claim was mailed to Taxpayer at the Manhattan Avenue Address. Boyce's wife works "from home a lot." R.R. at 39a. Boyce acknowledged that he is "not particular about where" bills for the Property are sent, and that he receives bills at both the Manhattan Avenue Address and the Sag Harbor Residence. *Id.* at 42a. Boyce would have paid any bill he received for the Property but he "false[ly] assum[ed]" that a property manager hired to maintain the Property paid any taxes owed for the Property. *Id.* at 43a. Boyce learned from the property manager that the Property had been sold.

The trial court issued an order on April 27, 2023, denying the Petition. The trial court found that the TCB complied with all notice requirements in RETSL. The trial court acknowledged that the signatures on the return receipts were "illegible[;]" however, Boyce agreed that the Manhattan Avenue Address is Taxpayer's correct mailing address and that he receives mail for Taxpayer at that location. *Id.* at 138a. Additionally, only Boyce and his wife live at the Manhattan Avenue Address. The trial court found it "not credible" that the USPS would deliver three notices to the wrong address and have two of those notices signed for by an unauthorized party. *Id.* at 139a. Citing *FS Partners v. York County Tax Claim Bureau*, 132 A.3d 577 (Pa. Cmwlth. 2016),[3] the trial court noted that the TCB is only required to send

---

[3] This Court held in *FS* that, where the signature on a certified mail receipt appeared to be that of an individual authorized to act on behalf of a business, a tax claim bureau satisfied its certified mail obligations under RETSL, and the tax sale could not be set aside, even if the **(Footnote continued on next page…)**

notices to the property owner – it is not required to provide proof that the property owner actually signed the certified mail receipt or actually signed the notices. This appeal followed.[4]

## II. Issues

Taxpayer argues that the TCB failed to comply with RETSL's notice requirements for serving the Tax Claim and the Tax Sale Notice and that the TCB should have made additional notification efforts under Section 607.1(a) of RETSL.[5] Taxpayer also argues that the trial court erred when it questioned Taxpayer about its purpose for purchasing the Property, as this suggests the trial court held a bias against nonresident property owners.

## III.   Discussion

Section 308(a) of RETSL provides that the TCB must provide notice of a tax claim by either registered mail or certified mail, return receipt requested.[6] Section 602(e) of RETSL relevantly requires that notice of an upset tax sale be made at least 30 days prior to the sale by certified mail, restricted delivery, return receipt requested.[7] Section 602(h) provides that "[n]o sale shall be defeated and no title to

---

signature was not the actual signature of the owner or agent and the owner did not receive the notice or have knowledge of the tax sale.

[4] This Court's review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision that lacks supporting evidence, or clearly erred as a matter of law. *Nguyen v. Del. Cnty. Tax Claim Bureau*, 244 A.3d 96, 101 n.3 (Pa. Cmwlth. 2020).

[5] Added by the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a).

[6] 72 P.S. § 5860.308(a).

[7] 72 P.S. § 5860.602(e).

5

property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section."[8]  When a mailed notice is either returned without the required signed receipt or under other circumstances that raise a significant doubt that the named addressee received the notification, Section 607.1(a) of RETSL provides that the taxing authority "must exercise reasonable efforts to discover" the addressee's whereabouts.[9]

First, Taxpayer argues that the TCB failed to serve the Tax Claim and the Tax Sale Notice as required by RETSL, as no proof exists that the signatures on the return receipts are those of anyone authorized to act on Taxpayer's behalf, and Boyce testified that the signatures are not his or his wife's.  Taxpayer maintains that it did not receive either notice and points out that the return receipts lack information such as the date of delivery and whether the receipt was signed by the addressee or an agent.  Thus, if the TCB could not confirm that the signatures were those of an individual authorized to act on Taxpayer's behalf, the TCB was required to make additional notification efforts under Section 607.1(a).

Purchaser maintains that the TCB complied with the requirements of RETSL, which only specify the manner in which the notices have been sent.[10]  RETSL does not set forth the information to be contained on the return receipt, such as the printed name of the signer, or mandate that the agent/addressee boxes be checked, and RETSL does not require actual notice to the property owner.  Citing our decision in

---

[8] 72 P.S. § 5860.602(h).

[9] 72 P.S. § 5860.607a(a).

[10] The TCB joined in Purchaser's brief.

*FS*, Purchaser argues that the TCB was not required to make additional notification efforts after it received the signed return receipts from the USPS, as the TCB had no reason to believe the notices were not properly served. The fact that the signatures were illegible would not create doubt sufficient to require that the TCB make additional efforts to serve Taxpayer. Additionally, because Taxpayer is an LLC, the TCB would have no way of knowing who is authorized to accept service on Taxpayer's behalf.

Each party cites a decision of this Court as dispositive of the issue. Taxpayer relies on *Williams v. County of Monroe*, 303 A.3d 1098 (Pa. Cmwlth. 2023), while Purchaser cites to *FS*. We will discuss these decisions in turn.

In *Williams*, the county tax claim bureau sent notice of a pending tax sale to the property owner by certified mail. The return receipt from the USPS contained the owner's printed name in the signature box. The "received by" box contained a printed entry stating "[COVID-19] Rt 41." *Williams*, 303 A.3d at 1100. The property owner, Lisa Williams (Williams), did not sign the return receipt, and Williams's daughter was not authorized to sign for mail on Williams's behalf. Following the sale of her property, Williams filed a petition to set aside the sale on the basis that she did not receive the certified mail notice. The trial court upheld the sale after concluding that the tax claim bureau satisfied its certified mail obligation, regardless of whether Williams signed the return receipt or actually received notice of the sale.

This Court disagreed with the trial court, as Section 602(e) of RETSL requires that the notice must be signed for on behalf of the personal addressee or someone with authorization. The return receipt did not contain *any* signature, as Williams's name had only been printed, and the notice designated "[COVID-19] Rt 41" in the

7

"received by" box. *Id.* at 1103. Although a tax claim bureau is not required to "inquire behind a signature to determine whether it is genuine[,]" Section 607.1 of RETSL requires that additional notification efforts must be made when circumstances raise significant doubt as to personal receipt by the owner. *Id.* at 1101. We concluded that the printed name and notation "[COVID-19] Rt 41" were insufficient to show notice to Williams and should have signaled to the TCB the inadequacy thereof. *Id.* Because the tax claim bureau failed to take additional steps to determine that the notation on the return receipt constituted sufficient proof that Williams received the notice, we reversed the trial court's order denying Williams's petition to set aside the tax sale.

*FS* concerned a partnership, FS Partners (FS), that owned real property in York County, with a principal place of business in York, Pennsylvania, located in a building owned by one of FS's partners, Jerry Stahlman. Stahlman took care of FS's bills, including the payment of real estate taxes. The York County tax claim bureau sent tax claim notices and tax sale notices to the York, Pennsylvania, address by certified mail. The tax claim bureau received certified mail receipts from the USPS that were signed by the individual who received the notices. After the property was sold at tax sale, FS filed a petition to set aside the sale, arguing that it had not received notice of the sale. At a hearing before the trial court, Stahlman denied receiving the tax sale notice. He testified that the printed name on the return receipt did not resemble the way he printed his name, and he could not verify that the signature on the card was his. Stahlman acknowledged that he was the only person who worked at the York, Pennsylvania, property, and he could have been there on the day the notice was delivered. A handwriting expert could not confirm whether the signature was Stahlman's. After finding that Stahlman signed the return receipt, and that he

8

was authorized to act on FS's behalf, the trial court confirmed the sale of the property. FS appealed to this Court.

In affirming the trial court, we recognized that a tax claim bureau bears the burden of proving that the notice requirements in RETSL have been satisfied. This does not require proof, however, that the property owner actually signed the certified mail receipt or actually received the notice. Rather, the tax claim bureau is only required to show that it *sent* the notices. Where the signature on a certified mail receipt appears to be that of an individual authorized to act on behalf of a business, the tax claim bureau has satisfied its certified mail obligations and the tax sale cannot be set aside, even if the signature was not that of the owner or agent and the owner did not receive the notice or have knowledge of the tax sale. Ultimately, this Court concluded that the tax claim bureau complied with Section 602(e) of RETSL because the tax sale notice was sent by certified mail to the correct address for FS, and the tax claim bureau obtained a signed return receipt evidencing delivery of the notice.

Instantly, we reject Taxpayer's argument that it did not receive proper notice, as the evidence demonstrates that the requisite notices were sent by certified mail to the correct address, and the return receipts were signed by an individual at the Manhattan Avenue Address. These facts render Taxpayer's appeal distinguishable from *Williams*, where the return receipt did not have *any* signature. Additionally, the deed transferring the Property to Taxpayer in 2020 contains a certification that the Manhattan Avenue Address is Taxpayer's "precise residence and complete post office address[.]" R.R. at 67a. Boyce, Taxpayer's sole member and owner, conceded that the Manhattan Avenue Address is Taxpayer's registered address. Moreover, Boyce testified that only he and his wife reside at the Manhattan Avenue Address, a single-family home, at which Boyce regularly receives Taxpayer's mail.

9

As we stated in *FS*, "where the signature on the certified mail receipt appears to be the signature of the owner or of an individual authorized to act for the owner, the tax claim bureau has satisfied its certified mail notice obligations and the tax sale cannot be set aside for failure to provide certified mail or regular mail notice, even if the signature was *not* the actual signature of the owner or its agent and the owner did not receive the notice and had no knowledge of the tax sale." *FS*, 132 A.3d at 583 (emphasis in original). Notwithstanding Boyce's testimony that the signatures on the return receipts did not belong to him or his wife, the trial court found it not credible that the USPS would deliver three separate notices to the wrong address or that an unauthorized individual signed the return receipts. It is the trial court's exclusive province as factfinder to evaluate the evidence presented and to draw inferences therefrom and to make credibility determinations. *In re Consol. Reps. & Return by Tax Claims Bureau of Northumberland Cnty.*, 132 A.3d 637, 653 (Pa. Cmwlth. 2016). Our courts have "long recognized the broad discretion given to the fact-finding trial court." *Id.*

We also reject Taxpayer's contention that the TCB was required to make additional notification efforts, as the TCB is not required to "inquire behind a signature to determine whether it is genuine." *Williams*, 303 A.3d at 1101. As Purchaser notes, because Taxpayer is an LLC, the return receipts would not have been signed in Taxpayer's name, but by someone authorized to sign on Taxpayer's behalf. The TCB is not positioned to know who is authorized to act on Taxpayer's behalf, and it was not required to show that Boyce "was the person who actually received and signed the certified mail receipt." *FS*, 132 A.3d at 583. Given that the Tax Claim and Tax Sale Notice were sent by certified mail to Taxpayer's registered address and signed by an individual at that location, nothing in the record suggests

10

the existence of circumstances that would have raised a significant doubt as to Taxpayer's receipt of the Tax Claim and Tax Sale Notice.

Taxpayer next argues that the trial court evidenced bias when it questioned Taxpayer's reasons for purchasing the Property. Although Taxpayer concedes that the trial court's order denying the Petition did not reference Taxpayer's "purpose" in owning the Property, Taxpayer maintains that the trial court's questioning of Boyce created an appearance that the trial court considered issues not relevant to the validity of the upset tax sale. Taxpayer's Br. at 20.

Purchaser argues that Taxpayer failed to preserve this issue by objecting to the discussion during the trial court hearing. Assuming the issue is not waived, Purchaser contends that the trial court's decision does not evidence any bias to Taxpayer or indicate that the discussion factored into the trial court's decision.

Purchaser is correct that an issue concerning perceived trial court error is generally waived if the party fails to preserve the issue with a timely and specific objection at trial. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000). Under the so-called *Hammer* exception to the waiver doctrine,[11] a party may raise an allegation of judicial misconduct for the first time post-trial if the record demonstrates that circumstances existed for which an objection would have had a

---

[11] *See Com. v. Hammer*, 494 A.2d 1054 (Pa. 1985), *abrogated on other grounds by Com. v. Grant*, 813 A.2d 48 (Pa. 2002). In *Hammer*, the Supreme Court held that the waiver doctrine did not bar an appellant's "well-founded" claim of prejudicial conduct by the trial court, despite his counsel's failure to object at trial. *Id.* at 1058. The Supreme Court reasoned that strict enforcement of the waiver doctrine was inadvisable after considering the trial court's position of power and authority and where the record reflected that raising an objection was meaningless and would only serve to intensify judicial animosity. In such circumstances, the failure of trial counsel to object to questioning by the trial court would not render a subsequent allegation of judicial impropriety unavailable for appellate review.

deleterious effect on the judge and lodging a timely objection would have been meaningless. *Id.*

Instantly, Taxpayer has not argued that the *Hammer* exception applies, and our review of the record does not reveal circumstances indicating that a timely objection would have been meaningless or caused greater harm. While Taxpayer raised an allegation of bias in its Statement of Errors Complained of on Appeal, Taxpayer's counsel never lodged a timely objection to the trial court's inquiry.[12] Thus, it appears that the issue is waived. Even if the waiver doctrine did not apply in this circumstance, there is no merit to Taxpayer's argument. The trial court questioned *both* parties about their respective reasons for purchasing the Property, and this discussion is not reflected in the trial court's order, which denied the Petition solely on the basis that the TCB satisfied the notice requirements in RETSL.

The record demonstrates that the TCB satisfied the notice requirements in Sections 308 and 602 of RETSL. Accordingly, we affirm the trial court.

_____
ELLEN CEISLER, Judge

---

[12] At best, Taxpayer's counsel questioned the relevance of the trial court's questioning, stating that Taxpayer's tenant had resided at the Property "for over [10] years[,] to the extent that it's relevant." R.R. at 8a.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Theodore Canton, LLC,  :
               Appellant  :
                 :
      v.  : No. 496 C.D. 2023
                 :
Dauphin County Tax Claim Bureau  :
and Blessing Muzirwa  :

## **O R D E R**

AND NOW, this 21st day of November, 2024, the April 27, 2023 order of the Dauphin County Court of Common Pleas is hereby AFFIRMED.

 

 

ELLEN CEISLER, Judge

Theodore Canton, LLC, : 
               Appellant : 
                : 
             v. :     No. 496 C.D. 2023
                : 
Dauphin County Tax Claim Bureau :     Argued: September 11, 2024
and Blessing Muzirwa : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE LORI A. DUMAS, Judge
                    HONORABLE STACY WALLACE, Judge

## _OPINION NOT REPORTED_

DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED: November 21, 2024

The Majority concludes that notice is effective under Section 602(a)(1) of the Pennsylvania Real Estate Tax Sale Law[1] (RETSL) so long as the domestic return receipt or "green card" is signed by someone (**anyone**), at the correct address, and that the RETSL does not require proof that the owner or his agent **actually** received the notice. I disagree. In my view, a common sense reading of Section 602(a)(1) can only lead one to the conclusion that **written acknowledgment that notice <u>was received by the property owner, or his agent</u>** is required to satisfy the tax bureau's notice obligations. There must be enough information on the return

---

[1] Act of July 7, 1947, P.L. 1368, _as amended_, 72 P.S. § 5860.602(a)(1).

receipt to enable the tax bureau to make the determination, as it is statutorily required to do, as to whether the intended recipient received the notice.

In reaching that decision I focus on what I believe are the key words in the RETSL that "the notice of sale be sent to the owner by United States certified mail, **restricted delivery, return receipt requested**, postage prepaid." 72 P.S. § 5860.602(a)(1). It is readily apparent that the Legislature, by requiring a form of mail that requires a return receipt, imposed a requirement that the owner of property **actually receive notice** before the tax sale. Using certified mail, return receipt requested provides the tax authority with documentation of personal delivery. The return receipt includes critical details which are essential for proving that the item was delivered to the correct party.

Section 602(a) of the RETSL dictates the use of certified mail, restricted delivery, return receipt requested, to effectuate valid notice of a tax sale. Customers may obtain a delivery record by purchasing a return receipt at the time of mailing. In accordance with the United States Postal Service (USPS) Domestic Mail Manual (DMM) § 503.3.1.1 (2024),[2] a letter sent certified mail-return receipt requested may not be opened or given to the recipient before the recipient signs and legibly prints his or her name on the return receipt, which is returned to the sender. DMM § 508.1.1.7(b). A signature along with the name of the recipient establishing to whom the letter was delivered is required. *Id.* When mail is marked "restricted delivery," it "is delivered only to the addressee or to the person authorized in writing as the addressee's agent (the USPS may require proof of identification from the addressee (or agent)[) ] to receive the mail." DMM § 508.1.1.8.

---

[2] The DMM is the authoritative document published by the USPS, the administrative agency in charge of mailing service. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The Majority and I disagree as to the legal effect of the incomplete return receipt at issue in this case. The Majority, erroneously in my view, concludes that the illegible signature, alone, is *prima facie* evidence that Theodore Canton LLC (Canton LLC) received the notice of sale, even though the rest of the return receipt was not properly completed. The RETSL clearly, by requiring that the notice of sale must be sent certified mail, restricted delivery, return receipt requested, mandates written proof of actual delivery, nothing less. The Majority's holding is in direct contradiction of the RETSL and the very purpose of the return receipt.

The return receipt provides mailers with **evidence of delivery**. The return receipt includes the information that the USPS and the Legislature (by incorporating the return receipt requirement) have determined accomplishes that purpose. Yet, the Majority today brushes that wisdom aside, assuming that the remainder of the information on the return receipt is insignificant and can be disregarded. In my judgment, the incomplete receipt falls short of meeting its burden to establish proper notice.

Critically, the return receipt at issue does not denote whether the signatory was the "Addressee" or an "Agent" of the Addressee because the corresponding boxes on the return receipt are unchecked. Absent that critical piece of information, the Bureau had no way of knowing whether (1) Canton LLC, (2) Canton LLC's authorized agent, **or (3) an occupant at the address, completely unaffiliated with Canton LLC,** actually received notice of the tax sale. The illegible signature on the return receipt, without any indication if the signatory is the recipient or the agent, is not enough to establish actual delivery of the notice of sale to Canton LLC or its agent. The Bureau could not possibly conclude from the return receipt that the notice of sale was actually delivered to Canton LLC or its authorized

agent. By **accepting** the illegible signature as evidence of actual delivery to Canton LLC, the Majority assumes, without foundation, that it was **not** an occupant completely unaffiliated with Canton LLC who signed the return receipt. I cannot fathom how that can be divined by looking at an illegible signature. It is just as likely that the illegible signature belonged to someone totally unaffiliated with Canton LLC. I believe the combination of the illegibility of the signature and lack of indication that the signatory was the recipient or an agent should have created a significant doubt as to actual receipt of the notice that triggered the Bureau's obligation to make additional notification efforts pursuant to Section 607.1 of the RETSL.[3]

Focusing on the illegibility of the signature, the Majority concludes that the Bureau would have no way of knowing who is authorized to accept service on Canton LLC's behalf. However, that is beside the point, and precisely why the USPS's return receipt form includes the "Agent" box. To be sure, if the "Agent" or "Addressee" box had been checked, I would not be writing this dissent, because in that situation, despite not knowing the signatory's identity, we would at least **know** that the person who signed it was either the recipient or its agent. To me, that would resolve the factual question of actual delivery in the Bureau's favor. There would be no need to "presume" delivery. After all, the very reason for requiring a return receipt is to **establish proof of delivery** and avoid reliance on the **presumption** of receipt, which is exactly what the Majority has done. When properly completed, the information on the return receipt will establish actual delivery or not. If the Legislature had intended service of a notice of sale to be effective upon proof of mailing to a correct address, without regard to who signed for it, it could have

---

[3] Section 607.1 was added by the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

specified that service by mail is effective merely upon the filing of a certificate of mailing. By specifying a form of mail requiring a return receipt, the Legislature was indicating its desire that something more than mere proof of mailing to the correct address is necessary to establish notice. That includes that the signatory either be the recipient or an authorized agent.

I also believe that the Majority misinterprets *FS Partners v. York County Tax Claim Bureau*, 132 A.3d 577 (Pa. Cmwlth. 2016), for the proposition that the RETSL does not require proof that the property owner actually signed the certified mail receipt or actually received the notice. That interpretation of *FS Partners* does not coincide with my reading of the case. Moreover, it is in direct contradiction of the RETSL, which, by requiring a return receipt, demands more than just proof of mailing.

In *FS Partners*, FS Partners (FS) was a general partnership, which owned property consisting of 20 acres of wooded and unoccupied land. *FS Partners*, 132 A.3d at 578. After FS failed to pay its 2012 real estate taxes, the county tax bureau sent a notice of tax sale by certified mail to FS's principal place of business. *Id.* at 579. The USPS provided the tax bureau a certified mail return receipt showing the printed name and the signature of one of FS's partners, Jerry Stahlman. *Id.* The property was subsequently sold at an upset tax sale. *Id.* FS sought to set aside the sale on the basis that it did not receive notice by certified mail. *Id.* at 580. FS argued that the notice was insufficient because it was not proven that Stahlman, himself, signed the certified mail receipt. Stahlman could not verify that the signature on the certified mail return receipt was his and testified that the printed name "was not written the way" he typically printed his name. *Id.* FS also presented an affidavit of a handwriting expert in an attempt to prove the signature was not Stahlman's. The

common pleas court overruled FS's objections to the tax sale and FS appealed to this Court, which affirmed. *Id.*

The issue before us was whether the certified mail receipt, which included a printed name "Jerry Stahlman" and a signature, was insufficient to satisfy the certified mail notice requirement because Stahlman had denied at trial that the signature was his. Construing Section 602(e) together with Section 602(h) ("[n]o sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section"), we explained that the bureau's proof of compliance of the notice requirements of the [RETSL] "does **not** . . . require proof that the property owner actually signed the certified mail receipt or actually received the notice. Rather, the tax bureau must only show that it **sent** all required notices to the property owner or owners, **not that the owner or owners actually received the notice of tax sale**." *FS Partners*, 132 A.3d at 581-82 (emphasis in original). We further explained that

> where the signature on the certified mail receipt **appears to be the signature of the owner or of an individual authorized to act for the owner**, **the tax claim bureau has satisfied its certified mail notice obligations** and the tax sale cannot be set aside for failure to provide certified mail or regular mail notice, even if the signature was not the actual signature of the owner or its agent and the owner did not receive the notice and had no knowledge of the tax sale.

*Id.* at 582 (emphasis added).

Because there was **other** sufficient information on the return receipts (a legible signature and/or printed name) from which the tax bureau could assure itself that the owners had actually received the notices, we held that the sale could

not later be defeated by Stahlman's testimony that it was not his signature. In those circumstances, the tax bureau is not required to inquire behind a signature to determine if it is genuine. *See Williams v. County of Monroe*, 303 A.3d 1098 (Pa. Cmwlth. 2023). *FS* in no way stands for the proposition that a lone illegible signature suffices to establish proof of actual receipt. *See also Aldhelm v. Schuylkill County Tax Claim Bureau*, 879 A.2d 400 (Pa. Cmwlth. 2005) (where William J. Paulosky, who was identified in the tax bureau records as the president of Aldhelm, Inc., signed the certified mail receipt sent to the corporation, tax bureau was not required to prove at trial the genuineness of Paulosky's signature); *In re Upset Tax Sale Held 11/10/97*, 784 A.2d 834, 836 (Pa. Cmwlth. 2001) (return receipt bearing signature of husband-owner's name was sufficient to satisfy certified mail notice requirement with respect to husband-owner, even though it turned out that his wife signed his name and did not inform him of tax sale).

Here, in contrast to the facts in *FS*, there was only an unintelligible scribble and no printed name on the return receipts, and neither the "Agent" nor "Addressee" box was checked. The Bureau's witness testified that as long as notices are "signed for" and returned, she believed there was no need for additional notification efforts. (Reproduced Record (R.R.) at 28a.) She assumed that because the return receipts were signed, that meant that the notices at issue were successfully delivered to the intended recipient, here, the person authorized to accept certified, restricted mail on behalf of Canton LLC. However, it was wrong for the Bureau to assume that because the return receipts, which were otherwise blank, were returned with an illegible signature, that they were delivered to Canton LLC.[4] The trial court

---

[4] This is not to say that an incomplete return receipt alone (*e.g.*, one devoid of a printed name where the signature is legible or one missing the date) will always negate delivery. For **(Footnote continued on next page…)**

likewise found that statutory notice was successful because "**[s]omeone** signed for a [c]ertified letter addressed to [Canton LLC] at that address in April of 2021 and July of 2022," and concluded from this that the Bureau complied with all requisite notices prior to selling the Property. (Trial Ct. Op., 4/21/23, at 1) (emphasis added). However, a tax bureau cannot meet its strict notice obligations under the RETSL "as long as" the returned receipts are signed by "someone."

Finally, I do not believe that the Majority gave due consideration to the "restricted delivery" requirement in Section 602(e)(1) of the RETSL. In fact, the Majority ignores it completely. Section 602(e)(1) of the RETSL **mandates** that a property owner be provided with notice that is mailed "restricted delivery." Restricted delivery limits the delivery of mail "to the addressee or to the person authorized in writing as the addressee's agent." DMM, § 508; *Dwyer v. Luzerne County Tax Claim Bureau*, 110 A.3d 223, 226-227 (Pa. Cmwlth. 2015). To satisfy Section 602(e)(1), the notice must be signed for by the personal addressee or someone with authorization. *Williams, 303 A.3d at 1101*. In the case of an individual, it is imperative that the return receipt include a legible printed signature. It is the only way a tax bureau could confirm actual delivery to the intended recipient.

In *Ali v. Montgomery County Tax Claim Bureau*, 557 A.2d 35 (Pa. Cmwlth. 1989), the tax bureau sent two notices. The first was addressed to "Ali Muhammad, c/o J. Colehower, Esq., Centre Sq. W. 38th Flr., Phila., PA 19102." The second was addressed to Ali Muhammad at the same address, but "c/o Saul, Ewing, Remick and Saul." 557 A.2d at 37. Both letters were marked certified,

---

example, in *In re Upset Price Tax Sale of September 13, 2006* (Pa. Cmwlth., No. 1102 C.D. 2007, filed October 22, 2008), we held that the recipient's failure to fill in the date on a return receipt card was not fatal because (1) the RETSL does not require that the tax bureau prove the recipient **received** the notice on any date certain, just that notice was **mailed** within 30 days of the sale; and (2) the recipient received the notice as evidenced by his signature on the return receipt.

restricted delivery, return receipt requested.  The return receipts for both letters were signed by "S. Croom."  *Id.*  The trial court found the mail notice faulty because the tax bureau did not establish that "S. Croom" was authorized to accept mail for Ali.  This Court agreed that the mail notice was insufficient because the return receipts were not signed by Ali Muhammad but were signed by a person whose identity and authority were unknown.  *Id.*  Here, as in *Ali*, a completely unidentifiable and unknown person signed for the certified, restricted delivery of mail sent to Canton LLC.

In the case of corporate taxpayers, the signature on the return receipt must belong to an individual authorized by the owner to accept certified mail.  A corporation is a creature of legal fiction that can only act through its officers, directors, or other agents.  *Ashley v. Ashley*, 393 A.2d 637 (Pa. 1978); *Walacavage v. Excell 2000, Inc.*, 480 A.2d 281 (Pa. Super. 1984).  Accordingly, in the case of a tax sale notice, our courts have held that an officer, director or another authorized agent must accept mail on behalf of the corporation.  In most situations, as here, the tax bureau will not know who is authorized to sign on behalf of a corporation.  The return receipt is designed for this very situation so that when the "Agent" box is checked, the tax bureau would have no reason to contemplate that there were any notification problems or that the notice did not effectively reach the owners of record.

In this case, both return receipts were illegibly signed.  Neither receipt indicated if the signer was an "Addressee" or "Agent."  This should have signaled to the Bureau the inadequacy of the notices.  There was absolutely no way the Bureau could have assumed that "whoever" signed the return receipt was authorized by Canton LLC to sign for its mail simply because it was sent to the correct address,

and someone signed for it. By requiring that service by return receipt delivery to an individual at a business address be completed by certified mail, restricted delivery, *i.e.*, endorsed "deliver to addressee only," the Legislature has signaled that actual delivery to the individual is an essential matter that is necessary to assure the reasonable objective of making the party served aware that an action or proceeding is pending in a specified court in which his or her person, status, or property is subject to being affected. Without a printed name, or any indication that the signer was the "Addressee" or the "Agent" of the intended recipient, it was impossible for the Bureau to assure itself Canton LLC had received the notices because the Bureau could not determine "who" signed for them. This irregularity on the face of the return receipt rendered the service defective. To conclude otherwise would render the RETSL's "restricted delivery" requirement meaningless. We cannot, as the Majority does, simply leave legislative intent out of the equation.

For these reasons, I cannot agree with the Majority's creation of a new presumption that, when a notice of sale sent via certified mail, restricted delivery, return receipt requested, a return of service signed by any unidentified person creates a presumption that the tax authority properly served the owner. "[T]he collection of taxes may not be implemented without due process of law." *Husak v. Fayette County Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). The United States Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:

> [P]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.

*Jones v. Flowers*, 547 U.S. 220 (2006). Due process is satisfied when the [tax b]ureau, before commencing with a tax sale, "provide[s] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). I would reverse the ruling of the trial court, declaring the tax sale null and void for want of due process.

$$\overline{\hspace{3cm}}$$
PATRICIA A. McCULLOUGH, Judge

Judge Wallace joins in this dissent.